| 90 | 109 |
|----|-----|
| 94 | 454 |
| 90 | 109 |
| 97 | 441 |
| 90 | 109 |
| 103 | 670 |
| 90 | 109 |
| 106 | 123 |

# Myers *v.* Conway & Co.

*Statutory Trial of Right of·Property in Stock of Goods.*

1. *Assignment for benefit of creditors, reserving exemptions; validity as against creditors.*—In making an assignment of his property for the benefit of creditors, a debtor may lawfully reserve to himself all the exemptions to which he is entitled under constitutional and statutory provisions, such reservation not being prejudicial to creditors, nor fraudulent as against them.

2. *Same; when title passes, as against attaching creditor.*—An assignment by a debtor for the benefit of his creditors, by which he "reserves to himself any and all exemptions to which he· is by law entitled," not specifying any particular articles or property, is executory until the articles claimed are selected and set apart as exempt; and it passes no title to the trustee, to any portion of the property conveyed, as against a creditor whose attachment is levied before such selection is made.

3. *Form of judgment; amendment nunc pro tunc.*—When a statutory claim suit is tried while the original attachment suit is still pending, and is decided in favor of the plaintiff, the judgment of condemnation should not be followed by an award of execution, but the property should be declared subject to the satisfaction of plaintiff's claim if and when he shall obtain judgment against the defendant; and being so erroneously entered, it may be amended *nunc pro tunc* at a subsequent term.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

The appellees in this case, J. M. Conway & Co., suing as partners, commenced suit by attachment, on the 29th Novem-

[Myers v. Conway & Co.]

ber, 1887, against M. J. Mullane; and the attachment was levied by the sheriff, on the same day, as shown by his return, "upon the stock of goods, wares and merchandise, consisting of dress goods," &c., "fixtures, and all other property in store No. 2, 118 Second Avenue, subject to levies heretofore made in favor of" several other creditors.    On the 6th December, 1887, a claim to the goods and other property was interposed by D. F. Myers, who made affidavit of ownership, and gave bond for a trial of the right of property.    An issue was thereupon formed between the plaintiffs and the claimant, under the direction of the court; the plaintiffs alleging that the property belonged to said Mullane, and was subject to their attachment, and the claimant denying these averments.    It appeared on the trial of this issue, as the bill of exceptions shows, that the claimant asserted title to the property under a deed of assignment executed to him, as trustee, by said Mullane, which was dated the 22d November, 1887.    The opinion states the material and controlling provision contained in this deed of assignment. The court charged the jury, on request, that they must find for the plaintiffs, if they believed the evidence; to which charge the claimant duly excepted.

The jury having returned a verdict for the plaintiffs, assessing the aggregate value of the property, by agreement, at $16,018.23, the court thereupon rendered judgment, "that the property on which the attachment in this cause was levied," describing it, "was the property of the said defendant in attachment, and liable to the satisfaction of plaintiffs' said attachment; and that said property be, and the same is hereby, condemned for, and made subject to the satisfaction and payment of plaintiffs' said claim, for which execution may issue."   This judgment was rendered on the 14th February, 1889.   In October, 1889, on motion of plaintiffs, this judgment was amended *nunc pro tunc*, by striking out the words, "*for which execution may issue*," and inserting the words, *if plaintiffs shall obtain judgment against defendant;*" and this was done against the objection and exception of the claimant.

The charge to the jury, the judgment *nunc pro tunc*, and other matters, are here assigned as error.

R. H. Pearson, A. A. Coleman, Taliaferro & Smithson, for appellant.

Mountjoy & Tomlinson, and Garrett & Underwood, *contra*.

SOMERVILLE, J.—The question is, whether the assignment made to the appellant, as trustee, for the benefit of the
Vol. xc.

creditors of the assignor, passed the title of the goods before the levy of the attachment. The instrument is drawn in the usual form, with the addition of the following clause: "But the party of the first part, in making this assignment, *reserves* to himself any and all exemptions to which he is entitled under the laws of the State." It is shown that the merchandise went into the possession of the assignee before the levy of the appellees' attachment. Does the clause above stated render the contract executory, so as to prevent the vesting of an absolute title in the trustee?

It may be admitted that the assignment is not rendered fraudulent, by reason of the reservation of the assignor's lawful exemptions from the operation of the transfer. This exempt interest is one not liable to his debts, and no prejudice can arise to creditors by its retention, if effected in a mode otherwise unobjectionable.—1 Amer. & Eng. Encyc. Law, 853, note 1, and cases cited; *Shirley v. Teal,* 67 Ala. 449; *Alley v. Daniel,* 75 Ala. 403. The point of difficulty does not lie in this feature of the case. It arises from the effect which is exerted upon the transfer of title by proof of the legal intention of the contracting parties.

We do not see any solid principle on which this case can be distinguished from that of *Block v. Maas,* 65 Ala. 211. There, the goods in controversy were transferred to the purchaser by bill of sale. The reservation made by the vendor was in these words: "*Reserving* and excepting the amount of $1,000 worth of said merchandise, &c., which is hereby selected by me, &c., *as exempt* under the laws of Alabama, and which personal property to the amount of $1,000 is not hereby conveyed, transferred or assigned." This court held that the sale was executory, and the title of the goods remained in the vendor until the selection of the $1,000 worth of goods had been made. "When the attachment was levied," say the court, "there was no individualizing the goods the vendor would select and retain, from the goods which would pass to the vendee; there was not one article which the vendee could claim was his property, free from the right of the vendor to retain and hold it."

There is no difference in signification and legal effect between the reservations respectively incorporated in these two instruments—the one in that case, and the one in this. The one in this case "reserves" to the assignor any and all exemptions to which he was entitled under the laws of Alabama. *Reserve* means to keep; to hold; to retain. The declaration is, that so much of the goods as the law exempted from debts should be taken out of the operation of the transfer—should

[Myers v. Conway & Co.]

not pass by it to the assignee. This necessarily implied the power to select the designated amount from the bulk or mass assigned, just as the debtor could do in case of a levy on his property under execution or attachment. The language of the reservation made in *Block v. Maas*, 65 Ala. 211, *supra*, stripped of its tautology, means precisely this, and nothing more. It is equally true in both cases, that "there was not one article which the vendee [or assignee] could claim was his property, free from the right of the vendor to retain and hold it." This power of the assignor to put his hands on each and any article found among the transferred goods, and, at his option, rescue it from the transfer, to the extent of $1,000 worth in value of the goods, is the weak spot in the transaction that vitiates it. It conclusively demonstrates an intention that the transfer shall not be complete—shall be executory—until the exempted goods are selected from the entire lot, or individualized by segregation.

It is in the power of the assignor to annex such conditions and qualifications to the transfer of his own property as he may see fit, taking the consequences of its effect upon the validity of the instrument. "If," as said by Selden, J., in *Jessup v. Hulse*, 21 N. Y. 168, "he annex an improper condition, the court must pronounce the assignment itself void. It can not hold the transfer good, and disregard the condition; because that would be to take the property from the assignor against his will. He having consented to part with his title only upon such conditions, the transfer and condition must stand or fall together. If, therefore, the court uphold the assignment, it must, of necessity, protect and enforce the terms and conditions upon which it is made."

The condition annexed in the present case is the reserved right of the assignor to select his exemptions, which, by necessary implication, attaches to the reservation itself, and without this reservation would be futile and of no effect. This condition, under the principle settled in *Block v. Maas, supra*, rendered the transaction executory until the selection was perfected.

There was, in this view of the case, no error in the court's giving the general affirmative charge for the plaintiffs.

The error in the judgment was clerical, and was properly amended *nunc pro tunc* by the City Court.—*Gray v. Raiborn*, 53 Ala. 40; *Parker v. Wimberly*, 78 Ala. 64.

Affirmed.